

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KIMBERLY GEE,

        Plaintiff,

    v.

STAFFING SOLUTIONS
ORGANIZATION, LLC,

        Defendants.
_____

1:22-CV-972 (LJV-MJR)

DECISION AND ORDER

## INTRODUCTION

This case has been referred to the undersigned pursuant to Section 636(b)(1) of Title 28 of the United States Code, by the Honorable Lawrence J. Vilardo, for the determination of all pretrial matters and non-dispositive motions. (Dkt. No. 10) Before the Court is plaintiff Kimberly Gee's motion to compel discovery. (Dkt. No. 30) For the following reasons, plaintiff's motion is denied.

## BACKGROUND

*Pro se* plaintiff Kimberly Gee, an African American female, filed an amended complaint on August 10, 2023, alleging race/color discrimination, harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law ("NYSHRL"). (Dkt. No. 22) According to the amended complaint, plaintiff was hired by defendant Staffing Solutions Organization, LLC ("SSO"), on January 11, 2021, as a part-time contact tracer, during the COVID-19 pandemic. (*Id.* at ¶ 4) The position allowed for fully remote work and plaintiff alleges that, at the time she was hired, SSO allowed her to create her own weekly work schedules. (*Id.*) While

employed by SSO, plaintiff also worked part-time at the Residence Inn by Marriott. (*Id.* at ¶ 5)

After SSO promoted plaintiff to full-time employment, she continued to also work for Marriott two days per week. (*Id.*) In or around August 4, 2021, SSO promulgated new scheduling requirements, including mandates that plaintiff work a certain number of weekend shifts. (*Id.* at ¶ 6) Plaintiff requested that she be permitted to work from 9:00 a.m. to 1:00 p.m. on Saturdays and Sundays, in order to continue to work her part-time job for Marriott, later in the afternoon and evening, on those same days. (*Id.*) Plaintiff alleges that while Caucasian employees were permitted to "self-schedule" their contact tracing shifts with SSO, in order to accommodate either other employment or their personal lives, her scheduling request was denied. (*Id.*)

Plaintiff also requested that she be permitted to work some of her shifts as a contact tracer from a private hotel room at the Residence Inn, since her shifts at the hotel were scheduled to begin immediately after her shifts as a contact tracer ended. (*Id.* at ¶ 8) According to plaintiff, SSO allowed contact tracers to work shifts outside of their homes, and many of her Caucasian co-workers worked their shifts from hotel rooms or from a "vast array of public places on an ongoing and consistent basis." (*Id.* at ¶ 9, ¶ 13) Plaintiff alleges that SSO refused to allow her the same flexibility as to her work location. (*Id.*)

Plaintiff alleges that on September 20, 2021, she reported to SSO's human resources department that she believed she was being discriminated against on the basis of race, specifically with regard to scheduling. *(Id.* at ¶ 10) On September 24, 2021, plaintiff was placed on unpaid leave by SSO while defendant determined if plaintiff violated Health Insurance Portability and Accountability Act ("HIPAA") requirements by

working her contact-tracing shifts from a hotel room. (*Id.* at ¶ 13) On September 28, 2021, plaintiff filed a charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at ¶ 16) Also on September 28, 2021, SSO completed its investigation and determined that plaintiff had not violated HIPAA. (*Id.* at ¶ 17) Plaintiff was returned to work and paid for the time she had been placed on leave. (*Id.*)

Plaintiff alleges that when she returned to work with SSO, she complied with defendant's demands that she work weekend shifts. (*Id.* at ¶¶ 19-20) Plaintiff indicates that she changed her schedule with Marriott to meet the needs of defendant. (*Id.*) However, plaintiff alleges that she was still not permitted the same flexibility in scheduling that was given to Caucasian employees by SSO. (*Id.*) Plaintiff informed defendant that she filed a discrimination charge with the EEOC. (*Id.*) On October 1, 2021, plaintiff was again placed on unpaid leave by SSO. (*Id.* at ¶ 21) Plaintiff alleges that defendant again cited HIPAA concerns with regard to plaintiff performing contact tracing from a hotel room, even though defendant previously indicated this issue had been resolved. (*Id.*)

On October 8, 2021, defendant met with plaintiff and accused her of committing fraud on a number of dates by claiming to be working as a contact tracer for SSO at the same she was working shifts at the Residence Inn by Marriott. (*Id.* at ¶ 26) Stated another way, defendant accused plaintiff of "double dipping" or collecting paychecks from both SSO and Marriott for shifts scheduled on the same dates and times. (*Id.* at ¶ 26, ¶ 30) Defendant terminated plaintiff on October 28, 2021, stating that plaintiff did not cooperate with their investigation of her employment with Marriott. (*Id.* at ¶ 30) The termination letter further indicated that defendant determined that plaintiff's shifts at her secondary employment overlapped with her contact-tracing shifts with SSO. (*Id.*) Plaintiff denies that

3

she ever worked for both Marriott and defendant at the same time, and maintains that she fully cooperated with defendant's investigation of this issue. (*Id.* at ¶¶ 30-31)

Plaintiff alleges that defendant discriminated against her on the basis of race when it denied her the same scheduling opportunities, and other terms and conditions of employment, as Caucasian employees, and that defendant terminated her in retaliation for her complaints of race discrimination. (*Id.* at ¶¶ 37-39)

## **DISCUSSION**

Plaintiff served her First Set of Interrogatories on October 26, 2023. Interrogatory One stated as follows:

> Identify each and every employee, contract tracer, supervisor, staff who were selected or applied on their own for another position whether that position was permanent or contract work when contact tracing's contract ended before and after 2021. Identify those for Public Consulting Group and Staffing Solutions Organization, LLC since the Plaintiff's application was Public Consulting Group and hire letter was from Public Consulting Group; identify those employees for both.

(Dkt. No. 30)

Defendant objected to Interrogatory One as overly broad, unduly burdensome, and irrelevant to the claims or defenses at issue in this lawsuit. (Dkt. No. 31-2, pg. 3) Notwithstanding these objections, defendant provided specific responses to plaintiff's Interrogatory One both in its Responses and Objections to Plaintiff's First Set of Interrogatories (Dkt. No. 31-3, pg. 3) and in its Supplemental Responses to Plaintiff's First and Second Sets of Interrogatories (Dkt. No. 31-2, pgs. 2-3). In those responses, defendant indicated that it is a staffing agency that hires individuals on a project by project basis. (*Id.*) Beginning in mid-2020 and ending on April 30, 2022, defendant hired thousands of individuals, including plaintiff, to work as contact tracers, and in other similar

4

positions, pursuant to New York State Department of Health's Contact Tracing Initiative (the "Initiative"). (*Id.*) Given the breath of the Initiative and the vast number of employees, SSO grouped its contact tracers into teams. (*Id.*) SSO then provided plaintiff with the names of two employees who were members of plaintiff's specific contact tracing team during the Initiative, and who were later rehired by SSO for other projects after the Initiative ended on April 30, 2022. (*Id.*) Defendant also disclosed each individual's race and the duration or expected duration of the other projects for which they were rehired. (*Id.*) In further response to plaintiff's Interrogatory One, defendant explained that since it is a staffing company that employs individuals on a project by project basis, there is no information to disclose regarding individuals who are "permanently hired." (*Id.*) Instead, individuals are hired "at will" and work for the duration of the specific project or projects for which they are hired. (*Id.*)

Plaintiff objects to defendant's response, contending that she is also entitled to information about individuals hired by Public Consulting Group, LLC ("PCG"), for other positions or projects, after the Initiative ended. (Dkt. Nos. 30, 34) Plaintiff claims she is entitled to this information because her application and hire letter were generated by PCG. (*Id.*)

Defendant responds that plaintiff was not employed by PCG. (Dkt. No. 31, pg. 5; Dkt. No. 31-2, pg. 4) Instead, PCG was the prime contractor for the Initiative, while SSO served as the subcontractor that employed, supervised, and managed all of the contact tracing staff, including plaintiff. (Dkt. No. 31, pg. 5) Defendant produced plaintiff's offer letter, which lists only SSO as her employer. (Dkt. No. 34, pg. 7) Thus, it appears that (1) plaintiff was never employed by PCG and (2) PCG is unlikely to have employment records

5

regarding any individuals hired for the Initiative, since those individuals were employed and managed by SSO. Moreover, PCG is not a defendant in this lawsuit. There is no indication that SSO would have, in its custody and control, employment records or other personnel records maintained by PCG. Thus, the Court denies plaintiff's motion to compel as to Interrogatory One in so far as plaintiff is requesting information or personnel records from PCG.

To the extent plaintiff seeks information about individuals outside of her specific contact tracing team, who were rehired by SSO for other positions or projects after the Initiative ended, the Court denies her request. In relying on comparator evidence to prove disparate treatment, plaintiff must show that she was "similarly situated in all material respects" to the individuals "with whom [she] seeks to compare [herself.]" *Dudley v. New York City Hous. Auth.*, 12-CV-2771, 2014 U.S. Dist. LEXIS 140052, at *51 (S.D.N.Y. Sept. 30, 2014) (internal quotations and citations omitted). The standard for "comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases" and "whether or not co-employees report to the same supervisor is an important factor in determining whether two employees are subject to the same workplace standards for purposes of finding them similarly situated." *Oliveras v. Wilkins*, 06 Civ. 3578, 2012 U.S. Dist. LEXIS 110908, *32 (S.D.N.Y. June 26, 2012) (internal citations omitted).

In its interrogatory responses, SSO indicates that, given the breath of the COVID-19 contact tracing operations, and the over 10,000 individuals hired and employed by SSO over the course of the Initiative, contact tracers were grouped into different teams. (Dkt. No. 34, pgs. 7-8) Here, the Court finds it reasonable that defendant limited its

response to Interrogatory One to those individuals on plaintiff's specific contact tracing team, who reported to the same supervisor as plaintiff, and who were rehired for additional positions or projects after the Initiative ended.[1]

Moreover, the Court notes that information about individuals who were rehired for other positions or projects after the Initiative ended are not necessarily relevant comparators to plaintiff for purposes of this lawsuit. Plaintiff does not allege that she was denied continued employed by SSO after the Initiative ended. Instead, she claims that she was discriminated against in the terms and conditions of her employment, based on race, and that she was wrongfully terminated from the Initiative project in retaliation for complaining about discrimination. Thus, relevant comparators would likely be individuals who are not members of plaintiff's protected class and who were permitted flexibility in scheduling their contact tracing shifts. Relevant comparators may also be individuals, who are not members of plaintiff's protected class, and who were permitted to conduct their contact tracing work outside of their home, either in a hotel room, as plaintiff requested, or in a similar location. Finally, relevant comparators may be individuals outside of plaintiff's protected class who engaged in the same alleged conduct as plaintiff but were not terminated from the Initiative.[2]

---

[1] Plaintiff indicates that information about individuals hired or rehired by defendant after the Initiative ended is relevant to her request for lost wages, since defendant "insinuated" that lost wages were not owed to plaintiff beyond April 30, 2022, the date the Initiative ended. Here, plaintiff alleges that she was unlawfully terminated from the Initiative project. She does not allege that she sought, and was denied, employment with defendant for any project other than the Initiative. If plaintiff is successful in her lawsuit, she may be entitled to lost wages based upon her termination from the Initiative prior to the project's conclusion. However, the Court finds it unlikely that information about individuals hired for projects other that the Initiative would be relevant to plaintiff's claim for lost wages.

[2] Based on the allegations in the complaint, it appears that plaintiff has knowledge of specific employees, outside of her protected class, whom she alleges were similarly situated and treated more favorably by defendant.

For these reasons, the Court finds that defendant has sufficiently responded to Interrogatory One. Plaintiff's request for additional information or documentation in response to this interrogatory is denied.

Plaintiff served a Second Set of Interrogatories on December 4, 2023. Interrogatory One of Plaintiff's Second Set of Interrogatories stated as follows:

> Identify the phone call made between Tina Allen and Sarah Reich. Here is a brief explanation for the interrogatory: On September 29 at 10:03 AM someone name[d] Tina Allen sent an email to Nancy Whitacre, Leilani Pelletier, Shelia Cole, Nina D. Amico Keiffer and Sarah Reich. These are emails that you all provided to me in discovery. It stated:
> Do we have a resolve on this matter?
> Sarah replied: at 11:14 am and at the end of the email she stated she escalated the matter internally to legal counsel to make sure there are no other variables we may need to consider.
> Tina replied at 11:51: is there a reason I am missing that you need legal counsel? Sarah replied: I will give you a call with details.
> Identify the communication discussed during that phone call or via text message on September 29, 2021 between Tina Allen and Sarah Reich.

(Dkt. Nos. 30) ("Second Interrogatory One").

Defendant responded to plaintiff's Second Interrogatory One both in its Responses and Objections to Plaintiff' Second Set of Interrogatories (Dkt. No. 31-4, pgs. 3-4) and in its Supplemental Reponses to Plaintiff's First and Second Set of Interrogatories (Dkt. No. 31-2, pgs. 4-5) Specifically, defendant explained that during a phone call on September 29, 2021, Sarah Reich, Human Resources Manager for Contact Tracing Projects, and Tina Allen, Call Center Director, "generally discussed SSO's investigation into Plaintiff's conflicting statements about working her second job at the Marriott at the same time she was working for SSO." (Dkt. Nos. 31-2, 31-4) Defendant further explained that the telephone conversation occurred after Allen questioned why Reich mentioned the involvement of legal counsel in her September 29, 2021 email. (*Id.*) SSO also produced,

to plaintiff, 48 pages of emails regarding SSO's investigation into plaintiff. (Dkt. No. 31-1, ¶ 10) Defendant further indicated, in its interrogatory responses, that any other information and/or documentation pertaining to the investigation into plaintiff was protected from disclosure because it was "directly related to the seeking and/or obtaining of legal advice from SSO's counsel." (Dkt. No. 31-2, pg. 5) To that end, defendant produced a privilege log dated August 16, 2023. (Dkt. No. 31-1, ¶ 10; Dkt. No. 31-2, pg. 5)

The Court finds that defendant has produced all relevant and non-privileged information in its possession regarding the September 29, 2021 conversation between Allen and Reich. Defendant has generally explained what was discussed between Allen and Reich during the call. Defendant states that there is no transcript of the call and that neither Allen nor Reich took notes regarding their September 29, 2021 conversation. (Dkt. No. 31, pg. 6) Defendant has also produced 48 pages of emails regarding the main topic of the call between Allen and Reich, namely the investigation into plaintiff's secondary employment with Marriott.

Plaintiff contends that additional details about either the investigation in general, or the conversation between Reich and Allen specifically, are not protected from disclosure by attorney-client privilege because she was not under investigation on September 29, 2021. However, defendant submits that plaintiff was, in fact, under investigation on September 29, 2021, and that she had not been informed otherwise. (Dkt. No. 31-2, pg. 5) These representations are consistent with the record. The emails produced by SSO reflect that human resources employees and/or supervisors were

discussing the investigation on September 29, 2021, and plaintiff was not terminated by SSO until October 28, 2021.

Moreover, even if plaintiff was not under investigation on September 29, 2021, this fact would have no bearing on whether the documents in question are protected by attorney-client privilege. The attorney-client privilege protects communications made between an attorney and his or her client when the communication is made in confidence and for the purpose of seeking, obtaining, or providing legal assistance to the client. *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). In addition, the privilege "protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation, and thus the dissemination of confidential communications to [the corporation's employees] does not defeat the privilege." *Coventry Capital US LLC v. EEA Life Settlements Inc.*, 17-CV-7417; 2021 U.S. Dist. LEXIS 181137, at *6-7 (S.D.N.Y. Sept. 15, 2021). *See also In re Allergan PLC Sec. Litig.*, 18 Civ. 12089, 2021 U.S. Dist. LEXIS 171331, at *7-8 (S.D.N.Y. Sept. 9, 2021) ("[A]ttorney-client privilege is not lost where there is distribution within a corporation of legal advice received from its counsel, provided that disclosure is made to employees that are in a position to act or rely on the legal advice contained in the communication.") (internal citations and quotations omitted).

Here, defendant has represented that any information or documentation not disclosed to plaintiff regarding the September 29, 2021 phone call, and/or the investigation into her secondary employment, is directly related to the seeking or obtaining of legal advice from defendant's counsel. Thus, plaintiff's motion to compel a further response by defendant to plaintiff's Second Interrogatory One is denied.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to compel (Dkt. No. 30) is denied. In addition, defense counsel has moved for a 30-day extension of time to file dispositive motions, in part due to the hospitalization of her father and a hearing scheduled in another matter. (Dkt. No. 38) Defendant's request is granted and dispositive motions shall be filed on or before July 31, 2024.

**SO ORDERED.**

Dated:   June 17, 2024
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge